Filed 9/18/23  In re S.W. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re S.W., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B327560 (Super. Ct. No. J073162) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>A.W.,<br><br>    Defendant and Appellant. | |

A.W. (Father) appeals from the juvenile court's order terminating his parental rights to his daughter, S.W., and selecting adoption as the permanent plan.  (Welf. & Inst. Code,[1]

---

[1]Further unspecified statutory references are to the Welfare and Institutions Code.

§ 366.26.)  He contends, and the Ventura County Human Services Agency (the Agency) concedes, the order terminating his parental rights must be reversed because the Agency did not exercise due diligence in locating him.  We agree and reverse the parental rights termination order.

FACTUAL AND PROCEDURAL HISTORY

In October 2022, the Agency filed a juvenile petition alleging that six-year-old S.W. suffered serious physical and emotional abuse from A.H. (Mother) and her stepmother.  (§ 300, subds. (a), (b)(1), (c), (g) & (i).)  The petition alleged Father's whereabouts were unknown.

Mother identified Father as S.W.'s father.  She had not been in a relationship with him for four years.  She said they shared joint custody of S.W. because she never filed for sole custody.  S.W. did not visit Father because Mother had concerns about his ability to parent.  During an interview, S.W. said that she had not "talked to [Father] in 'a long time' and stated that he lives 'far away.' "

The Agency asked Mother about Father's whereabouts and information, but Mother denied having information.  The Agency also attempted to notice Father of the detention hearing, but the phone number it had for Father was not in service.  The Agency attempted to locate Father on the California Department of Corrections and Rehabilitation's Public Inmate Locator System, but the website was not allowing access.

At the detention hearing, Father was not present.  The juvenile court found Father to be the alleged father and ordered a paternity inquiry to be sent to the Department of Child Support Services.  At the conclusion of the hearing, the court found a prima facie case existed to detain minor in protective custody.

2

The Agency filed a jurisdiction/disposition report. The report stated that Father was listed as the father on S.W.'s birth certificate. The Agency contacted one of Father's aunts, E.S. She confirmed that Father was S.W.'s father. The aunt said that at Father's request, S.W. lived with her for three and a half months in 2019. The aunt said she no longer had a relationship with Father and did not know his whereabouts. The aunt said that the Modesto address the Agency had on file was from "years ago." The aunt reported that she tried to message Father on Facebook Messenger, but she had not heard back from him. The Agency also contacted one of Father's other aunts, who said she had no contact with Father and that the last time he posted on Facebook was in October 2021.

The report included a due diligence declaration regarding the Agency's attempt at locating Father. Using Father's full name, date of birth, social security number, and last known address, the Agency conducted a search of state and federal prison, voter registration, probation/parole, Calwin, CWS/CMS, child support division, and local jail databases. The CWS/CMS yielded a last known address in Modesto as of January 2020 and a phone number. The report noted that the Modesto address was the one E.S. claimed that Father had not lived at for years. The phone number also did not belong to Father.

The search of the child support division records resulted in a Bakersfield address. A parent contact letter was sent only to this Bakersfield address. No contact letter was sent to the Modesto address. The other searches did not result in any information.

At the jurisdiction/disposition hearing, Father was not present. Mother submitted on the jurisdiction/disposition report,

and the juvenile court sustained the petition.  The court bypassed reunification services for Mother and set a section 366.26 hearing and a notice review hearing.

In December 2022, without again contacting the Department of Child Support Services to locate Father, the Agency requested an order for publication and included the same declaration of due diligence it previously filed regarding its attempts to locate Father.  The juvenile court issued the order for publication to provide notice of the section 366.26 hearing to Father.  The Agency published notice to Father in a Bakersfield newspaper on four dates that month.

At the notice review hearing, the court found notice had been given to Father for the section 366.26 hearing.

At the section 366.26 hearing, Father was not present.  The court terminated Mother and Father's parental rights and selected adoption as the permanent plan.

DISCUSSION

Father contends and the Agency concedes the order terminating his parental rights must be reversed because the Agency did not exercise due diligence in locating him and giving him notice of the dependency proceedings.  We agree.

"In juvenile dependency proceedings, due process requires parents to be given notice that is reasonably calculated to advise them that an action is pending and afford them an opportunity to defend.  [Citation.]  Reasonable diligence includes not only ' " 'standard avenues available to help locate a missing parent,' but ' "specific ones most likely under the unique facts known to the [Agency] to yield [a parent's] address." ' " '  [Citation.]  'Social services agencies, invested with a public trust and acting as temporary custodians of dependent minors, are bound by law to

4

make every reasonable effort in attempting to inform parents of all hearings.  They must leave no stone unturned.'  [Citation.]" (*In re Jayden G.* (2023) 88 Cal.App.5th 301, 309.)

Moreover, "dependent families are entitled to an assurance that the Department will . . . take steps to ensure that Child Support Services is contacted whenever a parent is missing, and *contacted again at reasonable intervals* until the parent is located or the case is closed."  (*In re Megan P.* (2002) 102 Cal.App.4th 480, 489-490 (*Megan P.*), italics added.)

Failure to provide due process notice to a parent is a " 'fatal defect' " undermining the juvenile court's jurisdiction over the dependency judgment.  (*Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 483.)  Thus, reversal is required where the agency fails to exercise due diligence in searching for a parent. (*In re R.A.* (2021) 61 Cal.App.5th 826, 836.)

Here, the Agency concedes that "it likely did not fulfill its duty of due diligence" to locate Father.  As an example, the Agency admits that though it contacted the Department of Child Support Services early in the dependency proceedings, it did not contact the department before requesting publication to notice the section 366.26 hearing and again thereafter.

We accept the Agency's concession that it should have contacted the Department of Child Support Services at reasonable intervals.  Father "is entitled to that much—and future dependent families are entitled to an assurance that the Department will examine its procedures and take steps to ensure that Child Support Services is contacted whenever a parent is missing, and contacted again at reasonable intervals until the parent is located or the case is closed, so that this issue will not arise in the future." (See *Megan P.*, *supra*, 102 Cal.App.4th at pp.

5

489-490.)  Thus, we reverse the order terminating parental rights.

On remand, the juvenile court must conduct new dependency proceedings, beginning with a paternity inquiry, to determine whether Father is a presumed father.  The court shall hold a new jurisdiction and disposition hearing after providing proper notice to Father.  (*Megan P.*, *supra*, 102 Cal.App.4th at p. 490; *In re Arlyne A.* (2000) 85 Cal.App.4th 591, 599-600.)  Although our decision has the effect of restoring Mother's parental rights, "nothing in our decision requires the juvenile court to revisit its prior decisions concerning [M]other."  (*In re Mia M.* (2022) 75 Cal.App.5th 792, 814.)  "We acknowledge that our decision today will further delay permanency for" S.W.  (*Ibid*.)

## DISPOSITION

The order terminating parental rights, entered March 15, 2023, is reversed and the matter is remanded to the juvenile court with directions (1) to vacate the jurisdiction and disposition order and the order terminating parental rights, and (2) after providing Father with proper notice, to conduct new dependency proceedings, beginning with a paternity inquiry.

NOT TO BE PUBLISHED.



BALTODANO, J.


We concur:



GILBERT, P. J.                              YEGAN, J.


6

Tari L. Cody, Judge

Superior Court County of Ventura

_____


Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant.

Tiffany N. North, County Counsel, Joseph J. Randazzo, Assistant County Counsel, for Plaintiff and Respondent.